UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAUREN LEUTUNG,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
          Defendant.

---

**DECISION & ORDER**
17-cv-6626-JWF

## Preliminary Statement

Plaintiff Lauren Marie Leutung ("plaintiff" or "Leutung") brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for benefits. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings.[1] See Docket ## 14, 22. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 22) is **granted,** the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

On November 20, 2013, plaintiff protectively applied for disability insurance benefits and supplemental security income,

---

[1] Plaintiff's motion was filed as one for "remand" and appears on the docket as a "response" to the Commissioner's motion for judgment on the pleadings. See Docket # 22. However, in substance, it is a motion for judgment on the pleadings.

1

alleging various physical and mental impairments. Administrative Record, Docket # 10 ("AR"), at 330-42. Plaintiff's application was initially denied. AR at 225-32. On February 2, 2016, she appeared without legal counsel (but accompanied by a non-attorney representative) at an administrative hearing before Administrative Law Judge Stanley K. Chin ("the ALJ"). AR at 175-200. At the hearing, the non-attorney representative indicated that plaintiff intended to file additional medical records and the ALJ held open the record for two weeks for plaintiff to do so. AR at 180-82. Plaintiff did not file those records and the ALJ closed the record and issued an unfavorable decision on March 22, 2016. AR at 28.

Plaintiff appealed the ALJ's decision to the Appeals Council ("the AC") and the AC denied plaintiff's appeal on July 7, 2017, making this the final decision of the Commissioner. AR at 1-6. In denying plaintiff's appeal, the AC rejected certain treatment records that the pro se plaintiff had submitted to the AC. Some of these records appear to be the chemical dependency records plaintiff's non-attorney representative referenced at the hearing. The AC "did not consider" this evidence, explaining that some of it was not new and that the rest did "not show a reasonable probability that it would change the outcome of the decision." AR at 2.

Plaintiff, still acting pro se, commenced this action on September 8, 2017. Docket # 1. The Commissioner moved for

2

judgment on the pleadings in April 2018 (Docket # 14), and plaintiff, through her newly retained counsel, filed what she styles as a motion for remand on July 2, 2018 (Docket # 22). Attached to her motion are medical source statements from her treating physician. The Commissioner replied to plaintiff's specific arguments several weeks later on July 16, 2018. Docket # 24.

## Discussion

Plaintiff advances three somewhat related arguments in support of her motion for remand: (1) the ALJ failed to develop the record in light of plaintiff's mental impairments and pro se status; (2) the Commissioner erred in refusing to consider new and material evidence Leutung provided to the AC; and (3) the treating source medical opinions attached to plaintiff's motion papers constitute new and material evidence that justify remand. Because the Court concludes that remand is required with respect to plaintiff's first argument, it does not address the remaining two.

Plaintiff's primary argument is that the ALJ failed to develop the record when he knew plaintiff had mental impairments, was proceeding pro se, and was attempting to submit additional medical evidence, but failed to request this evidence himself and closed the record without ever inquiring further about it. The Court agrees that, given these circumstances, the ALJ was obligated to develop the record and failed to do so here.

It is well-established that "Social Security proceedings are inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 110-11 (2000).

> Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." Sims, 530 U.S. at 111, 120 S. Ct. 2080. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)-(f)). This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016). Whether an ALJ has sufficiently developed the record is a threshold question that requires the court to "be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record" prior to reviewing whether the Commissioner's decision was supported by substantial evidence. Scott v. Astrue, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). Failure to meet

4

this duty requires remand to fully develop an adequate record. Gabrielsen v. Colvin, No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4 (S.D.N.Y. July 30, 2015). Because this Court is convinced that the ALJ did not satisfy his duty to develop the record here, remand is required.

Initially, it is important to note that the ALJ determined at Step Two of the familiar five-step sequential disability determination process that plaintiff's severe impairments included major depressive disorder, borderline personality disorder, generalized anxiety disorder, and panic disorder. AR at 17. Plaintiff's testimony at the hearing paid tribute to her mental health impairments and limitations in handling full-time competitive employment. The ALJ's duty to develop the record and resolve ambiguities is enhanced where, as here, the plaintiff suffers from a psychiatric impairment. Lacava v. Astrue, No. 11-CV-7727 WHP SN, 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012) ("The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment."), report and recommendation adopted, No. 11 CIV. 7727 WHP, 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012). This heightened duty in cases involving psychiatric impairments has been discussed in numerous cases in the Second Circuit and elsewhere. Gabrielsen, 2015 WL 4597548, at *4 (collecting cases). Given his determinations at Step Two and

the plaintiff's hearing testimony, the ALJ was clearly aware of his heightened duty to develop the record.

The duty to develop an adequate record is "doubly heightened" where, as here, the plaintiff has a mental impairment and is proceeding pro se. Corporan v. Comm'r of Soc. Sec., No. 12-CV-6704 JPO, 2015 WL 321832, at *3 (S.D.N.Y. Jan. 23, 2015) ("Equally well established is the principle that when a disability claimant is unrepresented, an ALJ's duty to develop the record is 'heightened.'") (citing Cruz v. Sullivan, 912 F.3d 8, 11 (2d Cir. 1990)). Although plaintiff appeared at the hearing with a representative, that person was not an attorney and thus could not be expected to be a reliable or knowledgeable advocate for plaintiff on either the law or the facts pertaining to plaintiff's disability case. Not only did plaintiff proceeded without legal representation at the hearing, she continued to represent herself after the conclusion of the hearing, by, among other things, attempting to submit additional records to the AC and then commencing this federal court action on her own.

As to whether the ALJ adequately discharged this "doubly heightened" duty, the Court determines that he did not. At the hearing, plaintiff's non-attorney representative indicated that she had "submitted some additional records from her primary care and from her - from Pinewild that were not included on the original disc that I reviewed." AR at 180. However, the ALJ could not

6

find those records and asked plaintiff to "submit that again if you have additional records." AR at 181. The representative also indicated that she had requested records from Unity Chemical Dependency but had not received those records. AR at 182. And again, in response, the ALJ stated, "[w]hat I'll do is I'll leave the file open for two weeks for you to submit those records then." AR at 182.

The ALJ did hold the record open for two weeks but the documents from the chemical dependency program never made it into the record and the ALJ decided the case without them. The ALJ was aware that additional records as to plaintiff's mental health impairments existed. He also knew that plaintiff had tried to submit the records once before, failed, and was struggling to properly file them. In a similar case in the Northern District of Alabama, the district court found that simply leaving the record open for a pro se plaintiff with psychological issues who was struggling to submit records is insufficient to satisfy the ALJ's duty. Frazier v. Barnhart, 437 F. Supp. 2d 1275, 1277 (N.D. Ala. 2006) ("The ALJ in this case met neither his ordinary nor his heightened duty. Leaving the record open for later submission of medical records was not sufficient to meet the ALJ's duty here. Review of the hearing transcript makes it plain that Mr. Frazier had little understanding of how to obtain medical records and which medical records were pertinent."). As in Frazier, the record here

is clear - based on what Leutung did supply to the AC - that plaintiff did not understand exactly what medical records were pertinent to her case. Simple fairness requires that she not be penalized for that.

Had the ALJ followed up and requested the treating doctor records he would have been able to consider relevant treatment records from the mental health program - later submitted by plaintiff herself to the AC - as well as medical source statements[2] from plaintiff's treating mental health physician, Dr. Muhammad Dawood. Three of the medical source statements were completed before the ALJ rendered his decision and two of them indicated that plaintiff would be "very limited" (unable to function 25% or more of the time) in ability to attend to a routine and maintain a schedule. Docket # 23, at 3, 7. The third medical source statement indicated that plaintiff was "very limited" in ability to maintain basic standards of hygiene and grooming. Id. at 11. A fourth - rendered after the ALJ issued his decision - listed plaintiff as "very limited" in both areas. The RFC limiting plaintiff to "simple, routine tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes," (AR at 20)

---

[2] These documents appear on the docket as Exhibit A to plaintiff's motion.

does not account for these limitations set forth by plaintiff's treating doctor.

"The duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician." Batista v. Barnhart, 326 F. Supp. 2d 345, 353-54 (E.D.N.Y. 2004). The importance of these records under the circumstances present here is obvious. The record relied on by the ALJ contained no treating physician medical source statement for the ALJ to consider.

> An ALJ cannot, of course, pay deference to the opinion of the claimant's treating physician if no such opinion is in the record. Thus, consideration of the duty to develop the record, together with the treating physician rule, produces an obligation that encompasses the duty to obtain information from physicians who can provide opinions about the claimant.

Paredes v. Comm'r of Soc. Sec., No. 16-CV-00810 (BCM), 2017 WL 2210865, at *17 (S.D.N.Y. May 19, 2017) (internal quotation and citation omitted). Knowing that the current record lacked a treating source opinion and it appearing that treating source records were available for inclusion in the record, the ALJ should have taken further action to supplement the record. "[T]he duty to develop a full record and to assist a pro se plaintiff compels the ALJ to move beyond pro forma compliance with the treating physician rule and to obtain from the treating source expert opinions as to

the nature and severity of the claimed disability." Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).

The error in failing to take affirmative steps to complete the record with an opinion from plaintiff's treating mental health provider was compounded by the ALJ's decision to give "great weight" to the opinion of a non-examining "psychological consultant." AR at 24. Indeed, the ALJ specifically stated in his decision that he had "generally adopted the findings of the State agency psychological consultant" in formulating the non-exertional limitations in plaintiff's RFC. AR at 24. This was problematic, particularly in light of plaintiff's mental health problems. "In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (remand required where ALJ credited a psychiatric opinion "based on a review of a cold, medical record"); see Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); Rodriguez v. Astrue, No. 07CIV.534 WHPMHD, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009)

("[A] doctor who has direct contact with a claimant—even as an examining doctor—is likely to have a better grasp of her condition than someone who has never seen the claimant."); Filocomo v. Chater, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").[3]

## Conclusion

For the foregoing reasons, the plaintiff's motion (Docket # 22) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated: March 27, 2019
Rochester, New York

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

---

[3] The other opinion the ALJ assigned "great weight" to was that of Kristine Luna, a psychological consultant who met with the plaintiff on a single occasion. Courts in our circuit have warned ALJs on the danger of relying on such "single meeting" evaluations, particularly when it comes to mental health opinions. In general, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz, 912 F.2d at 13; see also Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) ("We also acknowledge that generally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'")(quoting Cruz, 912 F.2d at 13).